# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                              |     |                           |
|------------------------------|-----|---------------------------|
| LUIS FRANCESCHI-RODRIGUEZ,   | )   |                           |
|                              | )   | C.A. No.: S25A-09-001 RHR |
| Appellant,                   | )   |                           |
|                              | )   |                           |
| v.                           | )   |                           |
|                              | )   |                           |
| PERDUE FOODS, LLC,           | )   |                           |
|                              | )   |                           |
| Appellee.                    | )   |                           |

Submitted: February 3, 2026
Decided: May 22, 2026

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board,*
**REVERSED**.

Walt F. Schmittinger, Esq., SCHMITTINGER AND RODRIGUEZ, P.A., Dover, Delaware, *Attorney for Appellant Luis Franceschi-Rodriguez.*

Andrea C. Panico, Esq., TYBOUT, REDFEARN & PELL, Wilmington, Delaware, *Attorney for Perdue Foods, LLC.*

**Robinson, J.**

Luis Franceschi-Rodriguez appeals from the Industrial Accident Board's (the "Board") decision to terminate his temporary total disability benefits after concluding he was not a displaced worker. The decision arose after Franceschi-Rodriguez received a compensable workplace injury on March 1, 2022, while he was working for Perdue Foods, LLC ("Perdue"), but was later released to work under permanent sedentary work restrictions. This court reverses the Board's decision without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Franceschi-Rodriguez is a native of Puerto Rico who only speaks and understands Spanish. Franceschi-Rodriguez obtained a four-year degree and certification in respiratory therapy while living in Puerto Rico. This education was entirely in Spanish. Franceschi-Rodriguez worked as a respiratory therapist in a Puerto Rican hospital from 1995 to 1998 and worked as a police officer part-time from 1988 to 1998.[1]

When Franceschi-Rodriguez's parents subsequently fell ill, he came to Massachusetts to care for them at some point in the 1990s[2] until 2020.[3] While taking care of his parents, Franceschi-Rodriguez did occasional painting work for a friend's

---

[1] D.I. 6, R. of Industrial Accident Board (hereinafter "R. of IAB"), Tab 9 at *13.
[2] It is unclear when exactly Franceschi-Rodriguez moved to Massachusetts. Franceschi-Rodriguez mentioned a few different years in the 1990s, but an exact year was not specified.
[3] D.I. 6, R. of IAB, Tab 2 at *59.

construction company. After the death of his parents, and upon moving to Delaware, Franceschi-Rodriguez got a job at Perdue. Because many employees at Perdue were Spanish-speaking, an interpreter was always available and some of the management staff were bilingual. Franceschi-Rodriguez's degree and certification from Puerto Rico could not transfer to Delaware unless he took courses and completed a certification exam in English.

On March 1, 2022, Franceschi-Rodriguez sustained compensable injuries while working at Perdue from the repetitive lifting of chicken boxes weighing around fifty-nine pounds. This lifting caused strain and injury to Franceschi-Rodriguez's right upper extremity. After undergoing surgery for his right shoulder in October of 2022, Franceschi-Rodriguez continued to experience pain, limited range of motion, and functional deficits.

Franceschi-Rodriguez's surgeon, Dr. Manifold, released him in July of 2023 with permanent sedentary work restrictions. Franceschi-Rodriguez was restricted from any overhead use of his right arm, and lifting, pulling, or pushing more than ten pounds. Dr. Mavrakakis, a specialist in spinal conditions, treated Franceschi-Rodriguez's non-compensable spinal injury and also restricted him to sedentary work. Franceschi-Rodriguez was evaluated throughout treatment by Dr. Gelman, Perdue's expert, between March 2023 and February 2025. Dr. Gelman initially opined that Franceschi-Rodriguez could perform light duty work, but then changed

3

his opinion to sedentary restrictions due to Franceschi-Rodriguez's worsening symptoms in February of 2025. Later, Dr. Gelman released an addendum—not based on any new information—attempting to change this opinion again to light duty work.

Based on this information, Perdue filed a petition for review with the Board on December 17, 2024, seeking termination of Franceschi-Rodriguez's benefits because he was physically able to work. In preparation for the hearing, Perdue acquired a labor market survey from Dr. Riley, which compiled a list of available jobs. The survey was based on Franceschi-Rodriguez's physical and vocational abilities and geographic location. Dr. Riley relied on Dr. Gelman's opinion that Franceschi-Rodriguez could perform light duty work. She was unaware that Franceschi-Rodriguez was unable to understand or communicate in English. Dr. Riley's survey compiled a list of ten jobs available, eight of which were considered light duty and two considered sedentary. Of the two sedentary jobs, one sought a bilingual applicant, and the other job was filled prior to the hearing, although Dr. Riley indicated a similar position would be available at a different location. Perdue did not have any positions available within Franceschi-Rodriguez's restrictions.

The Board held a hearing on the petition on August 4, 2025, and rendered a decision on August 11, 2025. In response to Perdue's request to terminate temporary total disability, Franceschi-Rodriguez claimed he was a displaced worker who should remain entitled to those benefits. The Board found in favor of Perdue,

4

reasoning that Franceschi-Rodriguez was not a displaced worker but was entitled to partial disability at the total disability rate.

In its decision, the Board addressed whether Franceschi-Rodriguez was a displaced worker. In weighing the evidence presented, the Board found there was no dispute that Franceschi-Rodriguez was no longer totally medically disabled and could work in some capacity. The Board found that Franceschi-Rodriguez was not actually displaced because he claimed to have sought employment in construction and housekeeping, which were beyond his physical abilities, and did not make an effort to find work within his restrictions. The Board also found that Franceschi-Rodriguez was not *prima facie* displaced for the following reasons:

> He is 58 years old and therefore below the normal retirement age. He has a four year university education, albeit achieved in Puerto Rico in his native Spanish tongue, and a ten year history of law enforcement experience, given the time he served as a police officer, also in Puerto Rico. While clearly Claimant's lack of proficiency with the English language is an employment barrier, it is not enough alone to support a finding that Claimant is *per se prima facia* displaced. His educational and vocational histories suggest that, outside of the language issue, Claimant has exhibited a host of skills beyond basic labor including a four year degree and a decade spent in law enforcement. While his inability to speak the national language by Dr. Riley's own admission may present obstacles for employment, especially for someone who has only worked in construction or as a factory laborer for Employer, and the need for sedentary work may well drain the pool of potential employers even further, at least as it relates to the instant matter, the Board does not find Claimant a *prima facia* displaced worker.[4]

---

[4] D.I. 6, R. of IAB, Tab 9 at *22.

The Board, in considering Franceschi-Rodriguez's ability to work and its impact on his earning capacity, found that he was limited to sedentary restrictions. In support of this conclusion, the Board explained why Dr. Mavrikakis' testimony was more persuasive and rejected Dr. Gelman's.

Because of this finding, the Board further addressed the labor market survey and reasoned that the only jobs available to Franceschi-Rodriguez were the two sedentary options. The Board stated that one option required a bilingual applicant, which Franceschi-Rodriguez is not eligible for because of his inability to speak, write, or understand English. The Board concluded that Franceschi-Rodriguez's language capabilities made the other option, which was potentially available in another location, unlikely to be viable.

Based on these findings, the Board ultimately concluded that although it was unwilling to find Franceschi-Rodriguez *prima facie* displaced, it was not persuaded that Franceschi-Rodriguez was capable of the same earning capacity as he was at the time of the injury. The Board stated that Perdue failed to establish Franceschi-Rodriguez's earning capacity according to his physical restrictions. The Board, therefore, concluded that Franceschi-Rodriguez was entitled to partial disability at the total disability rate.

After the Board rendered its final decision, Franceschi-Rodriguez timely filed this appeal on September 5, 2025.[5] He filed his opening brief on October 13, 2025.[6] Perdue filed its answering brief on December 10, 2025.[7] Franceschi-Rodriguez filed a reply brief on January 20, 2026.[8]

## THE PARTIES' CONTENTIONS

### A. Franceschi-Rodriguez's Claims

Franceschi-Rodriguez's primary claim on appeal is that the Board erred in finding that he was not a displaced worker and, therefore, not entitled to total disability. Most of Franceschi-Rodriguez's argument focuses on his language barrier. Franceschi-Rodriguez argues that the Board erred in finding that he was not *prima facie* displaced. His argument rests on the fact that he cannot read or write in English and is limited in understanding English. He explains that he was able to work at Perdue because there were primarily Spanish speaking employees, and an interpreter was available.

Franceschi-Rodriguez claims that the Board's determination was not supported by substantial evidence and that its reasoning supported a finding of *prima facie* displacement. Franceschi-Rodriguez argues that he is essentially unemployable

---

[5] D.I. 1, Appellant's Notice of Appeal.
[6] D.I. 12, Appellant's Opening Br. on Appeal.
[7] D.I. 13, Appellee's Answering Br.
[8] D.I. 18, Appellant's Reply Br. on Appeal.

due to his limitations, prior experience and education, lack of fluency in the English language, and lack of training. Franceschi-Rodriguez alleges that his prior education and work experience in Puerto Rico do not translate into present employability. He states that the Board has not identified how those skills are applicable and concludes that they are not transferable because of the language barrier. Franceschi-Rodriguez highlights that Dr. Riley could not find one job that the Board deemed suitable for him according to his restrictions.

Franceschi-Rodriguez relies on *Yoder v. Twin River Management Group, Inc.*, arguing that, as in his case, there was no substantial evidence to support the Board's conclusion in that case.[9] Franceschi-Rodriguez notes a difference between his case and *Yoder* is that the claimant there only had an eighth-grade education from an Amish school, whereas he has his four year degree and certification. Franceschi-Rodriguez reasons that this difference is insignificant because his education is not useful to him because of the language barrier.

## B.    Perdue's Claims

In its answering brief, Perdue asserts that the Board's decision was supported by substantial evidence because of Franceschi-Rodriguez's education, background, and transferable skills. Perdue agrees with the Board's decision that Franceschi-Rodriguez was not *prima facie* displaced because he has transferable skills based on

---

[9] 2025 WL 2207447 (Del. Super. Ct. Aug. 4, 2025).

his history. Perdue alleges that this background shows that he is a person capable of completing a university degree, working in the fields of healthcare and law enforcement, interacting with others, and developing new skill sets. Perdue states that the Board properly found that Franceschi-Rodriguez's language barrier was not enough alone to support *prima facie* displacement.

Perdue argues that this case differs from *Yoder*. Perdue points out that the claimant there was older, performed manual labor tasks longer, worked for the same employer for over twelve years, and only had a high school education. Perdue states that unlike the case here, the claimant in *Yoder* was proficient in English, had a smart phone, and could utilize a computer. Perdue contrasts the case with Franceschi-Rodriguez's situation by claiming that Franceschi-Rodriguez is capable of functioning in day-to-day society even with his language barrier. Perdue highlights Franceschi-Rodriguez's education, work experience, residency in two different states, caring for his ill parents, going to doctor's appointments, applying for jobs, and working at Perdue. Perdue asserts that Franceschi-Rodriguez's manual labor experience is limited compared to the work experience he had in Puerto Rico.

Perdue alleges that Franceschi-Rodriguez's claims that his skills are not transferable due to his language barrier is not supported by Dr. Riley's testimony. Perdue rests this assertion on accommodations that Dr. Riley claimed could be made at various jobs to assist Franceschi-Rodriguez's language barrier. Perdue references

Dr. Riley's discussion of voice recognition software that could be used in Franceschi-Rodriguez's native language and ADA accommodations for his injuries, such as a single-handed keyboard.

## C.    Franceschi-Rodriguez's Response

Franceschi-Rodriguez argues that any transferable skills he may have are a legal and practical nullity in Delaware's labor market. Franceschi-Rodriguez emphasizes that neither the Board nor Perdue has established what transferable skills he has and how they transfer to the labor market. Franceschi-Rodriguez asserts that his education and work experience in Puerto Rico, entirely in Spanish, ended nearly thirty years ago. He alleges that he has worked as a manual laborer for the last twenty-five years. Franceschi-Rodriguez argues that it is an error of law to categorize "decades-old, nontransferable certifications as 'skills' . . . ."[10]

Franceschi-Rodriguez also argues that Dr. Riley's accommodation suggestions of voice recognition software and one-handed keyboards are factually unsupported by the record. Franceschi-Rodriguez alleges that Dr. Riley came up with these accommodations but was unable to identify employers willing to offer them. Even if she was able to do so, Franceschi-Rodriguez states that he does not have the technological literacy to utilize these accommodations. Nonetheless, Franceschi-Rodriguez points out that the test for employment is whether jobs are

---

[10] D.I. 18, Appellant's Reply Br. on Appeal, at *3.

realistically within reach of the injured worker, not if employment is technically possible.

Finally, Franceschi-Rodriguez argues that he is more severely displaced than the claimant in *Yoder*. Franceschi-Rodriguez states that he was physically restricted like the claimant in *Yoder* but lacks the technological and communication tools that the claimant possessed. Franceschi-Rodriguez reasons that if an English-speaking laborer like the *Yoder* claimant was displaced, he should certainly be found displaced because of his language barrier and technological illiteracy.

## STANDARD OF REVIEW

This court has appellate jurisdiction over final decisions made by an agency under 29 *Del. C.* § 10142.[11] "The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[12] Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or "more than a scintilla but less than a preponderance of the evidence."[13] This court will not act as the trier of fact, weigh evidence, determine credibility, or make factual findings and

---

[11] *Foodliner v. Hidinger*, 2025 WL 2795866, at *5 (Del. Super. Ct. Sept. 30, 2025)(quoting *Quality Assured Inc. v. David*, 2022 WL 17442738, at *3 (Del. Super. Ct. Dec. 6, 2022)).
[12] *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Ct. Mar. 24, 2008)(citing *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993)).
[13] *Foodliner*, 2025 WL 2795866, at *6.

conclusions.[14] Rather, this court "must give deference to the experience and specialized competence of the Board and must take into account the purposes of the Worker's Compensation Act."[15]

## DISCUSSION

The displaced worker doctrine "is simple in articulation, but much more difficult in application."[16] It allows "a claimant to collect total disability even though she may have physically recovered sufficiently to return to the work force but is now unable to secure employment because of the injury."[17] Displacement occurs if the employee's injury makes it so he "will no longer be employed regularly in any well-known branch of the competitive market and will require a specially-created job . . . ."[18] This analysis is done on a case-specific basis and has shifting burdens between the employer and employee.[19]

When an employer files a petition to terminate total disability benefits, "the employer bears the initial burden of demonstrating that the employee was no longer totally incapacitated from working."[20] If this burden is met, it then shifts to the employee to establish he is a displaced worker.[21] The employee must prove "he is

---

[14] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[15] *Foodliner*, 2025 WL 2795866, at *6.
[16] *Smith v. Allen Foods*, 2026 WL 383832, at *1 (Del. Super. Ct. Feb. 11, 2026).
[17] *Miranda v. DuPont*, 2000 WL 303317, at *2 (Del. Super. Ct. Feb. 29, 2000).
[18] *Id.*
[19] *Wyatt v. State*, 1998 WL 283469, at *4 (Del. Super. Ct. Mar. 27, 1998).
[20] *Miranda*, 2000 WL 303317, at *2.
[21] *Id.*

12

an unskilled worker, unable to perform any task other than general labor," and that "his inability to perform the duties of a general laborer is causally related to the accident in issue."[22] If an employee cannot establish *prima facie* displacement, he can establish actual displacement by showing he made reasonable efforts or actively searched for a job, but was unsuccessful.[23] If displacement by either means is proven, the burden shifts back to the employer "to identify available job opportunities within the employee's restrictions."[24]

"The displaced worker test does not compel the Board to evaluate whether the employee is able to return to his former job, but rather, whether the employee is able to transfer his skills to employment in some other fashion."[25] The Board must consider factors such as "the employee's age, education, general background, occupational and general experience, emotional stability, the nature of work performable under the physical impairment and the availability of such work."[26] To render a decision on displaced worker status, the Board must weigh those factors together with the medical testimony.[27]

---

[22] *Hensley v. Artic Roofing, Inc*., 369 A.2d 678, 679 (Del. 1976).
[23] *Miranda*, 2000 WL 303317, at *2; *see also Hooten v. Blue Hen Disposal*, 2023 WL 1433129, at *7 (Del. Super. Ct. Feb. 1, 2023).
[24] *Hooten*, 2023 WL 1433129, at *7.
[25] *Hutchens v. Town of Milton*, 1996 WL 658813, at *4 (Del. Super. Ct. Oct. 8, 1996).
[26] *Id.* (quoting *Ham v. Chrysler Corp.*, 231 A.3d 258, 261 (Del. 1967)).
[27] *Id.*

Additionally, each case that raises the displaced worker doctrine is dependent on its own unique circumstances.[28] "While another case may be similar to that of Claimant, that case is not determinative to the outcome of this case; and this Court will not reverse the Board's holding simply because the two cases appear to be similar."[29] Although the parties here provided thorough arguments under *Yoder*, that case and others do not govern the outcome.

The primary issue the parties seek to have this court address is focused on Franceschi-Rodriguez's language barrier. This court agrees with the Board's finding that a language barrier alone is not sufficient to prove an employee is *prima facie* displaced. Rather, the effects of Franceschi-Rodriguez's physical injury coupled with the above referenced factors are determinative of displacement. Though not dispositive, a language barrier is still relevant to consider in a displaced worker analysis as seen in recent decisions from the Board.[30] Considering the record, this court finds that the Board's conclusion that Franceschi-Rodriguez was not *prima facie* displaced was not supported by the substantial evidence on the record. Therefore, its decision must be reversed.

---

[28] *Martinez v. Propak Logistics, LLC*, 2007 WL 3105817, at *3 (Del. Super. Ct. Oct. 2, 2007).
[29] *Id.*
[30] *See Yoder*, 2025 WL 2207447, at *4 (quoting the Board's decision, "[Claimant] is only 62 years old, finished 8th grade at an Amish school, has no language barrier and also speaks and reads in German and Pennsylvania Dutch."); *see also Smith*, 2026 WL 383832, at *3 (quoting the Board's decision, "Claimant completed 10th grade, has no language barrier, drives a car, functions as an adult in today's society, and has a delightful personality.").

14

**A.** **Franceschi-Rodriguez Established He Was *Prima Facie* Displaced at the Hearing.**

First, the court will consider whether Franceschi-Rodriguez sufficiently established he was *prima facie* displaced at the hearing before the Board. In doing so, "this Court is not restricted by the Board's findings of fact because it is the evidence before the Board rather than the findings of the Board with which this Court is concerned."[31]

After Perdue met its initial burden—which is undisputed—the record shows that Franceschi-Rodriguez met his burden of proving he is a *prima facie* displaced worker by establishing he is unskilled and can no longer work in general labor because of his injury.[32] Because he met this burden, this court does not have to consider whether Franceschi-Rodriguez is actually displaced.

1. Franceschi-Rodriguez is Unskilled Because He Cannot Perform a Job Other Than General Labor.

An unskilled worker is one who is "unable to perform any task other than general labor."[33] On his burden, Franceschi-Rodriguez met this definition. He explained that he worked for a friend's construction company doing painting work occasionally after moving to Massachusetts to care for his ill parents. After his

---

[31] *Zdziech v. Del. Auth. for Specialized Transp.*, 1988 WL 109338, at *4 (Del. Super. Ct. Oct. 13, 1988).

[32] *See Hensley*, 369 A.2d at 679.

[33] *Id.*

15

parents died, Franceschi-Rodriguez began working at Perdue in Delaware doing general labor. His work history beyond general labor was done in Puerto Rico and in Spanish, all of which ended around 1998.

Franceschi-Rodriguez's degree and certification in respiratory therapy is of no value now because it cannot be transferred to Delaware unless he is able to undergo further education and exams in English. Because Franceschi-Rodriguez would essentially have to start over to acquire the certifications in respiratory therapy that he had in Puerto Rico, and learn the English language to do so, he is effectively uneducated.

Because Franceschi-Rodriguez proved that he exclusively performed general labor since moving to Massachusetts and Delaware, coupled with his language barrier and the inability to transfer his education, it is clear that Franceschi-Rodriguez was unable to perform a job outside of general labor. Therefore, Franceschi-Rodriguez sufficiently established he was an unskilled worker.

2. Franceschi-Rodriguez's Injury is the Reason Why He Can No Longer Perform General Labor.

It is apparent that Franceschi-Rodriguez's physical restrictions to sedentary work, which arose from the injury he sustained in the accident at Perdue, prevent him from performing general labor. Prior to the injury, Franceschi-Rodriguez was able to find employment in general labor like painting and factory work, but his

injury and sedentary restrictions have removed general labor as an option. His inability to perform general labor now is directly caused by the restrictions imposed because of his injury, not other factors like his language barrier.

This is the exact type of situation that the displaced worker doctrine is intended to cover in that "a person who qualifies for displaced worker status is a worker who was a physical laborer before his injury, cannot after his injury do any physical labor, and is not educated enough to obtain employment where physical labor is not required."[34]

Because the record clearly reflects that Franceschi-Rodriguez's sedentary restrictions prevent him from performing general labor, Franceschi-Rodriguez met this requirement and ultimately met his burden of proving he was *prima facie* displaced.

**B.    The Board's Decision that Franceschi-Rodriguez was not *Prima Facie* Displaced is not Supported by Substantial Evidence.**

In weighing the evidence Franceschi-Rodriguez presented at the hearing, the Board acknowledged that Franceschi-Rodriguez: (1) was 58 years old, (2) had a four-year degree achieved in Puerto Rico in Spanish, (3) had a ten year work history in law enforcement in Puerto Rico, (4) was unable to speak English, (5) only performed construction or factory work for Perdue, (6) has a host of skills beyond

---

[34] *Zdziech*, 1988 WL 109338, at *4.

basic labor; and (7) required sedentary work because of his injury.[35] The Board

placed the greatest weight on Franceschi-Rodriguez's work history and education

from Puerto Rico. In doing so, however, the Board did not identify how Franceschi-

Rodriguez could transfer those skills to employment considering his work

restrictions.

These facts are similar to those in *Sabo v. Pestex, Inc.*, where the Board found

that a claimant was not *prima facie* displaced because he had skills from acquiring a

Commercial Driver's License ("CDL") that would qualify him for employment.[36]

The court, however, concluded that the Board failed to "elaborate on which skills it

found were transferable and how they would lift Claimant out of the general laborer

category."[37] The court went further in stating that it was unclear how the skills the

claimant used to initially acquire a CDL would be transferable considering the

claimant could no longer drive for extended periods and could not pass the required

physical examination necessary to use a CDL.[38]

Likewise, the Board here does not identify what skills Franceschi-Rodriguez

possesses that afford him the opportunity to work in a job other than general labor.

Rather, the Board references Franceschi-Rodriguez's degree and law enforcement

---

[35] D.I. 6, R. of IAB, Tab 9 at *22.
[36] 2004 WL 2735457, at *6 (Del. Super. Ct. Oct. 28, 2004), *reh'g granted*, 2004 WL 2827902 (Del. Super. Ct. Dec. 7, 2004)(deciding the case should not be remanded to the Board), *aff'd*, 2006 WL 250505 (Del. 2006).
[37] *Id.*
[38] *Id.*

18

experience without explaining how this background translates to a "host of skills." This reasoning ignores the fact that Franceschi-Rodriguez's degree and certification cannot be transferred to employment in Delaware without further education and testing in English. It is unclear how any skills Franceschi-Rodriguez used to acquire his degree in Puerto Rico would transfer in Delaware. Further, Franceschi-Rodriguez would seemingly not be a competitive applicant for any prospective job in law enforcement in Delaware because of his work restrictions and language barrier.

Some of the Board's statements seem to contradict its initial reasoning and instead support *prima facie* displacement. The Board mentioned that Franceschi-Rodriguez has only worked in general labor when discussing the difficulty he may face in finding employment.[39] It further noted that Franceschi-Rodriguez's language barrier, general labor background, and need for sedentary work "may well drain the pool of potential employers."[40] This reasoning appears to show that Franceschi-Rodriguez has met the definition of a displaced worker,[41] especially coupled with the Board's finding that none of the jobs listed on the labor market survey were suitable for Franceschi-Rodriguez, as later discussed. The Board instead concluded

---

[39] D.I. 6, R. of IAB, Tab 9 at *22 ("While his inability to speak the national language . . . may present some obstacles for employment, especially for someone who has only worked in construction or as a factory laborer for Employer . . . .").

[40] *Id.* ("[A]nd the need for sedentary work may well drain the pool of potential employers even further . . . .").

[41] *See Yoder*, 2025 WL 2207447, at *4 ("A displaced worker, 'while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly in any well-known branch of the competitive labor market.'").

that even with this information in mind, "as it relates to the instant matter, the Board does not find [Franceschi-Rodriguez] a *prima facie* displaced worker."[42] This court finds that the substantial evidence on the record—and as recognized by the Board in its decision—was not supportive of the Board's ultimate conclusion. Therefore, the Board's decision must be reversed.

## C. Perdue Would Have Failed to Meet its Burden of Proving Franceschi-Rodriguez had Employment Opportunities Within His Restrictions.

Had the Board found that Franceschi-Rodriguez met his burden of proof for displacement, it would have shifted the burden to Perdue to prove that there were employment opportunities within his restrictions. Although the Board did not find Franceschi-Rodriguez to be displaced, it still considered the employment opportunities Perdue presented in the labor market survey. The Board's findings demonstrate that Perdue would have failed to meet its burden.

In its discussion of the labor market survey, the Board found that none of the jobs presented in it were suitable for Franceschi-Rodriguez. The Board acknowledged Dr. Riley's reliance on Dr. Gelman's opinion that Franceschi-Rodriguez could perform light duty work and her admission that she was unaware of the extent of Franceschi-Rodriguez's language barrier when she performed the survey. Thus, because the Board rejected Dr. Gelman's opinion, the Board only

---

[42] D.I. 6, R. of IAB, Tab 9 at *22.

considered the two sedentary jobs on the survey. It concluded that Franceschi-Rodriguez was not eligible for the position seeking a bilingual applicant and, likewise, would not be a competitive applicant for the other position because of his language barrier. The Board concluded that although it was unwilling to find that Franceschi-Rodriguez was *prima facie* displaced, Perdue failed to demonstrate Franceschi-Rodriguez's earning capacity.

Further, Perdue's argument that accommodations could be made for the positions listed in the survey according to Dr. Riley are not enough to satisfy this burden. Although Dr. Riley stated that voice recognition software or single-handed keyboard accommodations could be made, Dr. Riley admitted in her testimony that she had not observed any of these tools in use while visiting the employers included in the survey. Thus, Perdue failed to meet its burden because:

> A showing of physical ability to perform certain appropriate jobs and general availability of such jobs is, in this Court's opinion, an insufficient showing of the availability of said jobs to a particular claimant and that a showing of this latter factor is necessary to satisfy the burden of proving that total disability has terminated.[43]

The accommodations that would be required for Franceschi-Rodriguez to be employable for the jobs mentioned in the survey, assuming they are available and

---

[43] *Abex Corp. v. Brinkley*, 252 A.2d 552, 553 (Del. Super. Ct. Apr. 3, 1969).

could be utilized, appear to make those jobs of the "specially created" type for which the displaced worker doctrine seeks to avoid.[44]

The Board relied on substantial evidence, including Franceschi-Rodriguez's limited physical capabilities and language barrier, in its conclusions about his ineligibility for the jobs listed. The Board properly considered Dr. Riley's efforts but acknowledged the flaws in the survey arising from the incorrect information she used to compile the jobs. Therefore, the Board adequately concluded that Perdue failed to prove Franceschi-Rodriguez's earning capacity, which, in turn, showed that Perdue would have failed to meet its burden had it shifted.

---

[44] *See generally Smith*, 2026 WL 383832, at *3 ("At oral argument, I asked employer's counsel about the disabilities, and how they would affect employment. The answer was an employer could allow breaks or help from another employer. For me this is exactly the type of 'specially created' job described in *Ham v. Chrysler Corp.*").

## CONCLUSION

For these reasons, the Board's decision to terminate Franceschi-Rodriguez's total disability benefits based on its finding that he is not a displaced worker is, therefore, **REVERSED**. Because it would be inequitable to remand this matter back to the Board,[45] this decision is without prejudice so Perdue may retain its right to file a new petition for review with the Board if it so desires.[46]

**IT IS SO ORDERED.**

---

[45] *Adams v. Shore Disposal, Inc.*, 720 A.2d 272, 273 (Del. 1998)("It would be inequitable to remand this matter for further proceedings on the basis of employment opportunities that are not current. A proper application of the displaced worker doctrine can only be made by considering the contemporaneous availability of employment.").

[46] *See Yoder*, 2025 WL 2207447, at *7.